IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLOSI DISTRIBUTING, INC., | No. C 10-3256 SI |
| Plaintiff, | **ORDER RE: DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| BMW OF NORTH AMERICA, LLC, | |
| Defendant. | |

Defendant Bavarian Motor Works of North America, LLC ("BMW"), has filed a motion for judgment on the pleadings. The motion is scheduled for hearing on February 11, 2011. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. **The case management conference scheduled for February 11, 2011 at 3:00 pm remains on calendar.** Having considered the papers submitted, the Court rules as follows.

**BACKGROUND**

Plaintiff allegedly entered into an exclusive paint supply agreement with non-party German Motors[1] on May 5, 2005. Compl. ¶ 3. The complaint alleges that defendant BMW was aware of the exclusive paint supply agreement between plaintiff and German Motors. *Id.* Despite this knowledge,

---

[1] The complaint alleges that plaintiff entered a contract with "German Motors Collision Center," and attaches a Customer Agreement between plaintiff and "German Motors Corporation, also referred to as BMW of San Francisco." The briefs concerning the pending motions attach other contracts, some of which refer to "German Motors Corporation dba BMW of San Francisco." The briefs sometimes refer to German Motors as a "body shop" and sometimes as a "BMW dealership." Although not clear, it appears that "German Motors Collision Center" is a department or adjunct of BMW of San Francisco; neither its precise legal status nor its relationship to BMW of San Francisco is specified.

1  plaintiff alleges, BMW later required German Motors to contract to use a paint line produced by BMW
2  on any BMW cars. Compl. ¶ 4. Plaintiff alleges that the BMW paint contract resulted in over $75,000
3  in damages including lost paint sales, non-paint sales that plaintiff would naturally have made as a
4  vendor to German Motors, "plus pre judgment interest in an amount according to proof, plus punitive
5  damages per Civil Code Section 3294 in an amount according to proof." *Id.* ¶¶ 4-5, 7.

6  The complaint alleges four causes of action: (1) interference with contract; (2) interference with
7  prospective economic advantage; (3) anticompetitive activity in violation of the California Business and
8  Professions Code Section 17200; and (4) unlawful tying agreement in violation of the California
9  Business and Professions Code Section 16724.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed but within such time as to not delay the trial, any party may move for judgment on the pleadings." The legal standard for Rule 12(c) is virtually identical to the standard for a motion to dismiss under Rule 12(b)(6). *See Dworkin v. Hustler Magazine, Inc*., 867 F.2d 1188, 1192 (9th Cir. 1989).

For a motion under either rule, the question presented is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a 12(b)(96) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)(citation omitted). A district court may, however, consider material that is "properly submitted as part of the complaint"; or, if the documents are not physically attached to the complaint, they may be considered if the documents' "authenticity is not contested and the plaintiff's complaint necessarily relies on them." *Id.* (citations, internal quotation marks, and ellipses omitted). A court may also take judicial notice of matters of public record. *Id.* at 689(citation omitted); *see also* Fed. R. Evid. 201.

While Rule 12(c) of the Federal Rules of Civil Procedure does not expressly provide for partial

2

judgment on the pleadings, neither does it bar them; it is common to apply Rule 12(c) to individual causes of action. *See Moran v. Peralta Community College Dist.*, 825 F. Supp. 891, 893 (N.D. Cal. 1993). "Courts have discretion to grant leave to amend in conjunction with 12(c) motions, and may dismiss causes of action rather than grant judgment." *Id.*

When a court finds the pleadings deficient, it must then decide whether to grant leave to amend. In general, leave to amend is only denied if it is clear that amendment would be futile and "that the deficiencies of the complaint could not be cured by amendment." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (per curium).

## DISCUSSION

### I.  Interference with contract and with prospective economic advantage (Claims 1 and 2)

Under California law, to state a claim for intentional interference with a contract, a plaintiff must allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guaranty Co.*, 960 P.2d 513, 530 (Cal. 1998). Intent to interfere with the contract does not need to be the primary purpose of the defendant's acts; rather, intent may be shown if the defendant knows that the interference is certain or substantially certain to occur as a result of his action. *Id.* at 531.

The elements for tortious interference with prospective economic advantage are similar to those of tortious interference with a contract claim. Generally, a plaintiff must plead: "(1) an economic relationship between the plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) an intentional act by the defendant, designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's wrongful act, including an intentional act by the defendant that is designed to disrupt the relationship between the plaintiff and a third party." *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 290 (Cal. 2008) (citation omitted). Moreover, "while intentionally interfering with an existing contract is 'a wrong in and of itself,' intentionally interfering

3

with a plaintiff's prospective economic advantage is not. To establish a claim for interference with prospective economic advantage, therefore, a plaintiff must plead that the defendant engaged in an independently wrongful act." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 953 (Cal. 2003) (citation omitted).

Here, plaintiff has alleged the requisite elements of each claim. Defendant BMW argues that plaintiff will not be able to prove its interference claims, pointing to a clause in the BMW/German Motors paint contract which represents and warrants that entering and performing the contract would not cause German Motors to breach any existing contracts. Defendant argues that such a warranty clause in another case, *Dollar Tree,* was sufficient to show that defendant lacked the requisite knowledge that the contract would interfere with other contracts. *Dollar Tree v. Toyama Partners, LLC,* 2010 WL 1688583, *3 (N.D. Cal. April 26, 2010). However, *Dollar Tree* involved a substantially different set of transactions (refinancing and renovation of a shopping center) and the complaint contained no clear statement of facts from which a competing inference could be drawn. Here, plaintiff specifically alleges that German Motors management informed BMW "that it had a multi year contract to purchase paint from only [plaintiff] and no one else." Compl. ¶ 8. Whether that can be proved at trial, and what evidence may be adduced concerning the various sets of negotiations, cannot be determined at this early stage. Further, plaintiff alleges interference with its expected economic opportunities to sell collateral, non-paint supplies by virtue of the contractual interference. Accordingly, the Court DENIES defendant's motion for judgment on the pleadings as to plaintiff's first two causes of action.

**II.    Unlawful tying agreement in violation of the California Business and Professions Code Section 16727 (Claim 4)**

An unlawful tying agreement generally occurs where the sale of one good is conditioned on the sale of a different good. *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 461 (1992) (citation omitted). To state a claim for an unlawful tying agreement under section 16727, the plaintiff must first allege both that: "a tying agreement, arrangement or condition existed whereby the sale of the tying product was linked to the sale of the tied product. . .;" and "the complaining party

4

sustained pecuniary loss as a consequence of the unlawful act." *Morrison v. Viacom, Inc.*, 66 Cal. App. 4th 534, 541-542 (1998) (citations omitted). After establishing the first two elements, the plaintiff must additionally allege that either, "the party had sufficient economic power in the tying market to coerce the purchase of the tied product;" or "a substantial amount of sale was affected in the tied product . . . ." *Id.*

Defendant argues that plaintiff has not alleged that the paint sales were tied to any other sale and thus fails to allege an unlawful tying agreement. The Court agrees. Plaintiff does allege that BMW "forced" German Motors to contract to use BMW paints. However, the complaint does not allege what the source of coercion is and if it relates to a tying agreement. The complaint is not clear as to how two products are tied. Plaintiff alleges that the tied goods are the BMW cars that need painting and the BMW paints. However, the contract between BMW and German Motors refers to "repair and refinish work" rather than to the painting of new cars. *See* Compl. Ex. A. Thus, it does not appear that the paint sales are tied to the purchase of cars needing painting, but rather that the paint sales relate to the painting of already purchased cars belonging to clients of German Motors. Accordingly, the Court DISMISSES plaintiff's claim for an unlawful tying agreement. Because it is unclear whether or not plaintiff can state a claim for an unlawful tying agreement, the Court grants plaintiff leave to amend.

**III.  Anticompetitive activity in violation of the California Business and Professions Code Section 17200 (Claim 3)**

To state a claim under the Unfair Competition Law ("UCL"), plaintiff must prove that defendant's conduct was unlawful, unfair, or fraudulent. Cal. Bus. Prof. Code § 17200; *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 540 (Cal. 1999). Section 17200 is to be read disjunctively. *Id.* This means that a cause of action need only meet one of the descriptors: unlawful or unfair or fraudulent. *Id.*

Pursuant to the UCL, which defines unfair competition, the "unlawful" practices prohibited are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made. It is not necessary that the predicate law provide for private civil enforcement. *Id.* The UCL borrows violations of other laws and treats them as unlawful practices independently actionable.

*Id.* "Unfair" refers to "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc*., 138 Cal. App. 4th 1215, 1225 (2006). "Fraudulent," as used in the statute, only requires a showing that members of the public are likely to be deceived. *Shroyer v. New Cingular Wireless Servs*., 622 F.3d 1035, 1044 (9th Cir. 2010).

Plaintiff argues that the allegation of BMW's unlawful tying agreement also suffices to allege a violation of the UCL. However, as discussed above, plaintiff has not stated a claim for an unlawful tying agreement. Plaintiff also alleges that defendant "forced" German Motors to buy BMW paint. This alone may be the type of anticompetitive behavior the Unfair Competition Law is intended to prohibit. However, plaintiff's allegations are too conclusory to be clear as to whether defendant's activity is in fact unfair. The contract between BMW and German Motors attached to the complaint as Exhibit B provides that if German Motors does not use the BMW paints that they cannot use BMW paint advertising materials. It is not clear whether plaintiff alleges this as the coercion/unfair business activity, or, if it did, whether this alone could rise to the level of coercion or unfair business activity.

However, the Ninth Circuit has recognized that tortious behavior such as intentional interference with a contract qualifies as the type of activity proscribed by the UCL. *CRST Van Expedited, Inc. v. Werner Enters.*, 479 F.3d 1099, 1107 (9th Cir. 2007). Plaintiff has sufficiently alleged that defendant interfered with plaintiff's contract and prospective economic advantage with German Motors. Accordingly, the Court DENIES defendant's motion for judgment on the pleadings as to plaintiff's claim of unfair competition.

///

///

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion for judgement on the pleadings as to plaintiff's claims for intentional interference with a contract, interference with prospective economic advantage, and unfair competition, and DISMISSES, with leave to amend, plaintiff's claim for an unlawful tying agreement. If plaintiff wishes to submit an amended complaint, it should do so by **February 25, 2011.**  (Doc. 28).

**IT IS SO ORDERED.**

Dated: February 7, 2011

SUSAN ILLSTON
United States District Judge